1

2

3

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

5

6

7

8

9

10

11

12

| | | |
|---|---|---|
| JENNY ROCHA, O/B/O A.R., MINOR CHILD, | ) ) ) | No. CV-11-3006-CI |
| Plaintiff, | ) ) ) | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | ) ) | AND REMANDING FOR AWARD OF BENEFITS |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

13      BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF

14  No. 17, 19.)  Attorney D. James Tree represents Jenny Rocha, on

15  behalf of A.R., a minor child (Plaintiff); Special Assistant United

16  States Attorney Leisa Wolfe represents the Commissioner of Social

17  Security (Defendant).  The parties have consented to proceed before

18  a magistrate judge. (ECF No. 7.)  After reviewing the administrative

19  record and briefs filed by the parties, the court **GRANTS** Plaintiff's

20  Motion for Summary Judgment, **DENIES** Defendant's Motion for Summary

21  Judgment, and **REMANDS** the matter to the Commissioner for an

22  immediate award of benefits.

23                          **JURISDICTION**

24      Plaintiff protectively filed for Supplemental Security Income

25  (SSI) on August 22, 2007.  (Tr. 13; 103.)  Her claim was denied

26  initially and on reconsideration. (Tr. 61-85.)  Plaintiff requested

27  a hearing before an administrative law judge (ALJ), which was held

28  on January 21, 2009, before ALJ Gene Duncan.  (Tr. 34-58.)  At the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

hearing, medical expert Marian Sherman, M.D., and Plaintiff's mother, Jenny Rocha, testified. (Tr. 51-59.) The ALJ denied benefits on August 14, 2009, and the Appeals Council denied review. (Tr. 1-5; 13-29.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was almost nine years old. (Tr. 137.) Plaintiff's mother testified that Plaintiff was in the second grade, and explained she was a year behind because she repeated first grade. (Tr. 38.) Plaintiff's mother reported that her daughter was still behind her peers, and Plaintiff had significant trouble with reading, writing and math. (Tr. 38-39.) Plaintiff's aunt tutored Plaintiff weekly, and Plaintiff was in special education classes. (Tr. 38.) Plaintiff also was overweight and suffered from severe eczema. (Tr. 41; 49.) Plaintiff's mother testified that Plaintiff has trouble focusing, and she is easily distracted. (Tr. 38.) Plaintiff's mother described a recent event when Plaintiff became frustrated, and she shaved off the back of her own hair. (Tr. 44.)

## ADMINISTRATIVE DECISION

ALJ Duncan found Plaintiff was a preschooler on August 22, 2006, when the application was filed. (Tr. 16.) The ALJ found Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. (Tr. 16.) The ALJ found Plaintiff had the following severe impairments: eczema and learning disability primarily verbal and reading. (Tr. 16.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925 and 416.926.) (Tr. 16.) The ALJ also found that Plaintiff does not have an impairment or combination of impairments that functionally equals the Listings (20 C.F.R. §§ 416.924(d) and 416.926a). (Tr. 19.) The ALJ concluded that Plaintiff has not been disabled since August 22, 2006. (Tr. 29.)

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 3

Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). The Social Security Administration has enacted a three-step sequential analysis to determine whether a child is eligible for SSI benefits on the basis of a disability. 20 C.F.R. § 416.924(a). First, the ALJ considers whether the child is engaged in "substantial gainful activity." *Id.*, at § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id.* at § 416.924(c). Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the regulatory "Listing of Impairments." *Id.* at § 416.924(c)-(d). An impairment is functionally equivalent to a

listed impairment if it results in extreme limitations in one area
of functioning or marked limitations in two areas.   20 C.F.R. §
416.926a (a).   An impairment is a "marked limitation" if it
"seriously interferes with [a person's] ability to independently
initiate, sustain, or complete activities." 20 C.F.R. §
416.926a(e)(2)(I).  By contrast, an "extreme limitation" is defined
as a limitation that "interferes very seriously with [a person's]
ability to independently initiate, sustain, or complete activities."
20 C.F.R. § 416.926a(e)(3)(I).

     In determining whether an impairment exists, the ALJ assesses
the child's functioning in six domains in terms of his/her ability
to: (1) acquire and use information; (2) attend and complete tasks;
(3) interact and relate with others; (4) move about and manipulate
objects; (5)  care for oneself, and (6) his/her general health and
physical  well-being.  20  C.F.R.  §  416.926a(a)-(b)  (2001).   To
demonstrate functional equivalence, the child must exhibit a marked
limitation in two of the domains, or an extreme limitation in one
domain. 20 C.F.R. § 416.926a(e)(2)(I).

<b>ISSUES</b>

     Plaintiff argues the ALJ erred by finding she was not disabled.
She maintains she established meeting Listing 112.05D.  (ECF No. 18
at 6-7.) Defendant contends the ALJ's decision is supported by
substantial evidence and free of legal error.  (ECF No. 20.)

<b>DISCUSSION</b>

**A.   Listing 112.05D.**

     Plaintiff argues that she provided evidence that established
she meets Listing 112.05D.  (ECF No. 18 at 6-7.)  A claimant is
presumptively disabled and entitled to benefits if he or she meets

or equals a listed impairment.  To "meet" a listed impairment, a disability claimant must establish that his condition satisfies every element of the listed impairment in question.  See *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); *Tackett*, 180 F.3d at 1099.  To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the most similar listed impairment.  *Id.* at 1099–1100.

The ALJ found that Plaintiff's "learning disorder does not meet or medically equal the Listing requirements for 112.05 *Mental Retardation.*" (Tr. 16.)  The ALJ added: "[i]n this case, there is no evidence that the claimant has marked restrictions in any of the required areas." (Tr. 18.)  The ALJ also found that Plaintiff does not meet or medically equal the corresponding adult Listings for mental retardation.  (Tr. 18.)

Listing 112.05D, which relates to assessing mental retardation in children, states in pertinent part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E or F are satisfied.
>
> . . .
>
> D.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05(D).  Significantly, the Regulations recognize that Listing 112.05 is different from other Listings:

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 6

> [t]he structure of the Listing[] for Mental Retardation
> (112.05). . . . is different from that of the other mental
> disorders. Listing 112.05 (Mental Retardation) contains
> six [6] sets of criteria. If an impairment satisfies the
> diagnostic description in the introductory paragraph and
> any one of the six sets of criteria, we will find that the
> child's impairments meet the Listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(A). The introductory paragraph to Listing 112.05 states that mental retardation is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." See 20 C.F.R. § 404, Subpart P, Appendix 1, Listing of Impairments ("Listing") 112.05. Plaintiff contends she meets Listing 112.05D. Listing 112.05D is satisfied if Plaintiff establishes "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of functioning." *Id. at* 112.05D. Thus, to meet the requirements of Listing 112.05D, a claimant must establish she meets three elements: (1) significant subaverage general intellectual functioning with deficits in adaptive functioning; (2) a valid verbal, performance or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing additional and significant work-related limitations of function. 20 C.F.R. Part 404, Appendix 1 (112.00 Mental Disorders).

**1.   Intellectual Functioning.**

According to the diagnostic definition of Listing 112.05, mental retardation is "characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. Pt. 404, Subpt P., App. 1, § 112.05. Plaintiff argues that she established all the criteria necessary to meet this Listing. (ECF No. 18 at 6-7.) Defendant responds in part

that Plaintiff does not meet the Listing because she was not diagnosed with mental retardation. (ECF No. 20 at 11.) However, the language of the Listing includes nothing about receiving a formal diagnosis. Moreover, the case law supports the conclusion that the analogous Listing 12.05 does not require a formal diagnosis of mental retardation. See *Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007) ("We have specifically held that a formal diagnosis of mental retardation is not required to fall within the confines of section 12.05"); see also, *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1057 (C.D. Cal. 2010) ("the absence of a diagnosis of 'mental retardation' does not preclude plaintiff from meeting section 12.05(C)."). In the absence of authority requiring a formal diagnosis of mental retardation, the Defendant's argument fails.

Additionally, Plaintiff introduced substantial evidence that she met the diagnostic definition – i.e., she suffers from subaverage general intellectual functioning with deficits in adaptive functioning. For example, tests administered by Dr. Toews revealed Plaintiff's perceptual reasoning abilities fall in the low average range, verbal abilities fall in the borderline range, and working memory, a measure of complex attention, concentration, and cognitive processing ability falls in the extremely low range. (Tr. 219.) The testing also revealed poor verbal comprehension and extremely poor ability to process and utilize information in functional ways. (Tr. 220.) Additionally, Plaintiff's high digit span score led Dr. Toews to hypothesize "she has severe computational deficits." (Tr. 220.) Finally, Dr. Toews noted Plaintiff's scores on picture completion and picture arrangement suggested, "poor visual discrimination, and poor ability to infer

cause and effect in social situations, and to sequence events thematically and/or temporally. She probably has deficiencies in attention to visual details, and ability to distinguish between essential and non-essential detail." (Tr. 220.) Dr. Toews also noted Plaintiff's significant verbal reasoning and cognitive processing deficits, combined with her family history of chaos and disruption, along with eczema that severely disrupts her sleep, all may compound her mental fatigue affecting attention, concentration, learning and ability to process information. (Tr. 220.) Dr. Toews concluded Plaintiff's test results indicate "a high probability of learning disorder(s)." (Tr. 220.)

Additionally, on October 9, 2006, Plaintiff's kindergarten teacher Leslie Huebner, noted Plaintiff had several obvious problems in attending to and completing tasks. (Tr. 121.) Plaintiff's mother reported that she gets sidetracked, quickly loses focus, and cannot finish an activity. (Tr. 38.) Plaintiff is tutored by her aunt, who observed Plaintiff has trouble comprehending new tasks. (Tr. 183.) Plaintiff's aunt noted that she is often unable to grasp the concept of new material, she forgets what she has already learned, and she has a hard time staying on task and ignoring distractions. (Tr. 183.) In sum, the record supports a finding that claimant suffered from subaverage general intellectual functioning with deficits in adaptive functioning.

**2.  Valid IQ score.**

On February 27, 2009, Jay M. Toews, Ed.D., administered several objective tests to Plaintiff. (Tr. 217-26.) Dr. Toews reported Plaintiff's IQ test scores from the WISC-III, were: Full Scale IQ 78; Verbal IQ 69; and Performance IQ 93. (Tr. 219.) Dr. Toews

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

noted that the "24 point discrepancy between Performance and Verbal IQ's is statistically significant, and may be clinically significant." (Tr. 219.) Dr. Toews did not elaborate. Related to the IQ scores, Defendant argues that "Dr. Toews indicated that the IQ scores were 'estimated' because of a 24 IQ point discrepancy between performance and verbal IQ, which was statistically significant, and possibly clinically significant." (ECF No. 20 at 11.) However, Dr. Toews did not indicate that Plaintiff's difference in scores invalidated the results. Also, evidence does not appear in Dr. Toews' report, or elsewhere in the record, that would allow an inference that Plaintiff's IQ scores were deemed invalid. Instead, Dr. Toews noted that Plaintiff's sleep issues and chaos at home likely affected her, and he opined that Plaintiff has "significant verbal reasoning and cognitive processing deficits" and "a high probability of learning disorder(s)." (Tr. 220.) Because no evidence exists that indicates Plaintiff's IQ scores were invalid, the record establishes Plaintiff meets this portion of the Listing with her Verbal IQ score of 69.

### 3.   Physical or other mental impairment

The third requirement of Listing 112.05D requires Plaintiff to establish a physical or other mental impairment imposing additional and significant work-related limitations of function. "[A]n impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987). In other words, this is the

definition of a "severe" impairment.[1]   Thus, in this circuit, a person who has a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function, meets the second prong of Listing 12.05C, and therefore would meet the third prong of Listing 112.05D.[2] *Id.*; see also *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir. 1997); *Edwards v. Heckler*, 736 F.2d 625, 629-31 (11th Cir. 1984); *Nieves v. Secretary of Health & Human Servs.*, 775 F.2d 12, 14 & n.7 (1st Cir. 1985)).   Because the ALJ found at step two that Plaintiff had severe impairments of eczema and learning disabilities, Plaintiff meets the final requirement of Listing 112.05D.   A review of the record reveals substantial evidence establishing Plaintiff's impairments meet Listing 112.05D.   The ALJ erred by finding Plaintiff was not

---

[1]   See also 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)("[f]or [Listing 12.05C], we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c).")

[2]"The statutory standard for child disability is explicitly linked to this functional, individualized standard for adult disability."   *Sullivan*, 493 U.S. at 529.   "A child is considered to be disabled "if he suffers from any . . . impairment of comparable severity" to one that would render an adult "unable to engage in any substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A) (1982 ed.).   *Id.*

disabled.

**B.     Remedy.**

The decision to remand for further administrative proceedings or to reverse and award benefits is within the discretion of the court.  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  Applying the Regulations to the fully developed record and the ALJ's findings, it is clear Plaintiff meets Listing 112.05(D); further administrative proceedings would serve no useful purpose and remand for an award of benefits is appropriate.  Accordingly,

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment **(ECF No. 17)** is **GRANTED** and the matter is remanded to the Commissioner for an immediate award of benefits.

2.    Defendant's Motion for Summary Judgment **(ECF No. 19)** is **DENIED**;

3.    An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Plaintiff, and the file shall be **CLOSED**.

DATED October 16, 2012.


S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12